UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

In Re:       ERNIE LEE JACOBSEN and                            Case No. 09-15667-DWH
             DONNA JEAN JACOBSEN,

             Debtors.

_____

MOTION TO SET PROMPT DEADLINE FOR ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED SIGN LEASES WITH SONIC; TO COMPEL PERFORMANCE UNDER EXECUTORY CONTRACTS AND UNEXPIRED SIGN LEASES WITH SONIC; TO REQUIRE SURRENDER OR PURCHASE OF SIGNS UNDER EXPIRED SIGN LEASES OR EXECUTION OF NEW SIGN LEASES; FOR ALLOWANCE AND IMMEDIATE PAYMENT OF SONIC'S ADMINISTRATIVE EXPENSE CLAIMS; FOR RELIEF WITH RESPECT TO RESTAURANTS ALLEGEDLY SOLD JUST PRIOR TO FILING OF DEBTOR'S BANKRUPTCY PETITION; AND PROHIBITING THE CLOSURE OF ANY OF DEBTOR'S SONIC RESTAURANTS OR CONDITIONING ANY SUCH CLOSURE UPON DEBTOR'S PROVIDING ADEQUATE PROTECTION TO SONIC

_____

Sonic Industries LLC ("Sonic"), a subsidiary of Sonic Corp., files this Motion requesting entry of an order: (1) establishing a prompt deadline for assumption or rejection of the executory contracts and unexpired leases of Debtor Ernie Lee Jacobsen ("Debtor") with Sonic and/or related companies; (2) compelling Debtor to perform immediately his obligations under same; (3) requiring Debtor to surrender or purchase Sonic signs under expired sign lease agreements or to execute new sign lease agreements; (4) allowing, and requiring immediate payment of, Sonic's administrative expense claims; (5) granting the relief specified in Paragraph 26 below with respect to six Sonic drive-in restaurants allegedly sold to Ronald ("Buddy") McClain just prior to the filing of the bankruptcy petition in this case; and (6) prohibiting closure of any of Debtor's Sonic restaurants, or conditioning any such closure upon Debtor's providing adequate protection to Sonic. Donna Jean Jacobsen, also a debtor herein, is not a party to the contracts and transactions that are the subject of this Motion. In support of this Motion, Sonic would show as follows, to-wit:

1

JURISDICTION

1. On or about October 29, 2009 ("Petition Date"), Debtors Ernie Lee Jacobsen and Donna Jean Jacobsen filed herein their voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

2. This Court has jurisdiction over the subject matter herein and the parties hereto pursuant to 28 U.S.C. §1334 and 11 U.S.C. §§365, 503(b)(1)(A), 363, and 105, along with other related statutes and rules. This is a core proceeding as defined by 28 U.S.C. §157(b)(2)(A).

REQUEST FOR ORDER COMPELLING PERFORMANCE OF SONIC LICENSE AGREEMENTS, PENDING THEIR ASSUMPTION OR REJECTION, IN ORDER TO AVOID FUNDAMENTAL UNFAIRNESS AND IRREPARABLE HARM TO SONIC

3. Beginning in 1953, Sonic and related companies established a unique brand of drive-in restaurant, with distinctive and proprietary trade names, trademarks, service marks, trade dress, foods, and food delivery system. At present there are more than 3,560 Sonic drive-in restaurants located in 42 states. All of them are franchised by Sonic and are independently owned and operated by various individuals and entities. Sonic, for itself and its franchisees, has a vital interest in ensuring high quality, uniform standards at all Sonic drive-ins. Each Sonic franchisee agrees to comply with Sonic's business policies, practices, and procedures in order to uphold those standards and, in turn, the value of the Sonic brand. Sonic franchisees also agree to comply with numerous monetary and non-monetary obligations as set forth in the applicable Sonic license agreements.

4. Over a period of years, Sonic and Debtor entered into a series of Sonic license agreements (the "License Agreements") whereby Sonic granted to Debtor a separate license for each of 11 Sonic drive-in restaurants at designated locations in Mississippi and Alabama.

5. In recent months, and continuing to the present, Debtor has enjoyed the benefits of being a Sonic franchisee and yet has failed or refused to fulfill various obligations, including: (a) paying monthly royalty fees, advertising fees, advertising cooperative contributions, and resulting late charges under the license agreements; (b) paying monthly sign rent under the

personal property leases; (c) submitting monthly profit and loss statements for each restaurant; (d) paying for monthly promotional kits; (e) allowing Sonic to regularly enter and inspect the premises to confirm that each restaurant is operating in compliance with Sonic's quality standards for food safety, cleanliness, sources, preparation, storage, packaging, and maintenance, all of which are necessary in order to safeguard public health and safety and to maintain goodwill associated with Sonic's brand; and (f) providing Sonic with certificates of insurance confirming that each restaurant has all forms of required insurance coverage. Set forth in the chart below are some of the provisions in the License Agreements that Debtor has breached and is continuing to breach and, where applicable, arrearages with respect to each such provision.

| License Agreement Section | License Agreement Section Text | Pre-Petition Indebtedness | Post-Petition Indebtedness Through 11/24/2009 | Currently in Compliance? |
|---|---|---|---|---|
| 5.02 Royalty Fees | On or before the 20th day of each calendar month, the Licensee shall pay a royalty fee determined by the following . . . . [scale based on the gross sales] | $185,640.67 | $48,330.00 | No. |
| 5.03 Advertising Fee | On or before the 20th day of each calendar month throughout the term of this Agreement, Licensee shall pay to Sonic Brand Fund, which is administered by SONIC, a brand contribution fee in an amount equal to .75% of the Gross Sales received by Licensee from the operation of the Sonic Restaurant during the calendar month next preceding the date of such payment. | $17,320.50 | $9,623.00 | No. |
| 5.05 Late Charges | In the event any payments required by Sections 5.02, 5.03 or 5.04, above, are not paid on or before the date on which | $6,170.29 | $2,780.42 | No. |

3

| | | | | |
|---|---|---|---|---|
| | they are due, a late charge in an amount equal to 1.75% per month shall be levied against such amounts due and shall be owing to SONIC by the Licensee from the date on which such obligations were due until any such obligations are paid in full. | | | |
| 6.04(a) Training | Licensee acknowledges the importance of the quality of business operations among all restaurants in the Sonic System and, agrees that it will not allow any of its licensed establishments to be opened or operated without having at least one individual working full time at the Sonic Restaurant who has completed the Stage Career Development Program. | | | The following drive-ins of Debtor do not have a manager or assistant manager who has completed Sonic's Management School or who have been ServSafe certified: Unknown at this time. |
| 6.05(b) Compliance with Entire System (Inspections) | SONIC shall have the right to inspect the Sonic Restaurant at all reasonable times to ensure that Licensee's operation thereof is in compliance with the standards and policies of the Sonic System. | | | Debtor has not authorized Sonic to make post-petition operational inspections. |
| 6.05(c) Compliance with Sonic Operations Manual | Licensee shall comply with the entire Sonic System as described herein and in the *Sonic Operations Manual*, including but not limited to the following: (i) Operate the Sonic Restaurant in a clean, wholesome manner in compliance with prescribed standards of quality, service and cleanliness, comply with all business policies, practices, and procedures imposed by SONIC, and maintain the building, equipment and | | | Uncertain; Sonic should be permitted to inspect all locations on a frequent basis. |

| | | | | |
|---|---|---|---|---|
| | parking area in a good, clean, wholesome condition and repair, well lighted and in compliance with designated standards as may be prescribed from time to time by SONIC. | | | |
| 6.05(c)(x) Compliance with Entire System (pay invoices) | Promotions/POP | $9,455.17 | $1,507.70 | No. |
| 6.05(c)(x) Compliance with Entire System (pay invoices) | Property Taxes | $64.13 | $0.00 | No. |
| 6.05(c)(x) Compliance with Entire System (pay invoices) | Sign Leases | $23,593.58 | $3,935.71 | No. |
| 6.05(c)(x) Compliance with Entire System (pay invoices) | Miscellaneous | $1,635.00 | $926.50 | No. |
| 6.05(c)(x) Compliance with Entire System (pay invoices) | Unapplied Cash | $0.00 | -$139.10 | No. |
| 17.02 Cost of Enforcement | If SONIC or SONIC's subsidiaries becomes involved in any action at law or in equity or in any proceeding opposing Licensee to secure, enforce, protect, or defend SONIC's rights and remedies under this License, in addition to any judgment entered in SONIC's favor, SONIC shall be entitled to demand of and (in the event SONIC prevails in such actions or proceedings) | To be determined. | To be determined. | Sonic requests that Debtor reimburse Sonic's costs, expenses, and attorneys' fees related to the this Chapter 11 case. |

| | | | |
|---|---|---|---|
| | recover from Licensee the reasonable costs, expenses and attorneys' fees incurred by SONIC. | | |

6. Debtor is committing trademark infringement by using Sonic's distinctive and proprietary trade names, trademarks, service marks, trade dress, foods, and food delivery system and yet not performing his responsibilities pursuant to the License Agreements. It is fundamentally unfair, and it amounts to unjust enrichment, for Debtor to continue to operate these 11 Sonic drive-ins and yet to fail or refuse to honor Debtor's monetary and non-monetary obligations under the License Agreements. Moreover, Sonic will suffer irreparable harm if Debtor does not immediately honor all of its non-monetary obligations under the License Agreements.

### REQUEST TO SET PROMPT DEADLINE FOR ASSUMPTION OR REJECTION OF DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED SIGN LEASES WITH SONIC

7. The License Agreements are identified in Paragraphs 9 through 19 below. In addition, Section 6.03 of the License Agreements requires Debtor to display and maintain at each location Sonic-approved signage. Except for one location, Debtor chose to lease such signage from Sonic and thus entered into a series of sign lease agreements (the "Sign Lease Agreements") whereby Debtor agreed to lease from Sonic signs utilizing Sonic's trademarks. Each Sign Lease Agreement also is identified in Paragraphs 9 though 19 below.

8. Pursuant to 11 U.S.C. §365(d)(2), Sonic requests the Court to establish a deadline of Tuesday, January 26, 2010 for Debtor to assume or reject the License Agreements and those Sign Lease Agreements, as described below, that have not expired by their own terms. If the Court decides not to set Tuesday, January 26, 2010 as the deadline for assumption or rejection of the License Agreements and the unexpired Sign Lease Agreements, then Sonic requests that the Court set a deadline very soon thereafter, as time is of the essence and any significant delay would be highly prejudicial and fundamentally unfair to Sonic.

9. On or about September 1, 1994, Sonic and Debtor entered a License Agreement for the

6

operation of a Sonic drive-in located at 1197 South Gloster, Tupelo, Mississippi (CIF 3005), a copy of which is attached hereto as Exhibit A. On or about November 16, 1999, Sonic and Debtor entered into the most recent Sign Lease Agreement by which Debtor leased from Sonic a Sonic sign for use at that particular location, a copy of said Sign Lease Agreement being attached hereto as Exhibit B. The express term of said lease has not yet expired. The License Agreement and the Sign Lease Agreement for that location should be integrated for the purposes of 11 U.S.C. §365.

10. On or about January 1, 1999, Sonic and Debtor entered a Number 5.2 License Agreement for the operation of a Sonic drive-in located at 302 Highway 12 East, Starkville, Mississippi (CIF 2857), a copy of which is attached hereto as Exhibit C. On or about November 18, 1999, Sonic and Debtor entered into the Sign Lease Agreement by which Debtor leased from Sonic a Sonic sign for use at that particular location, a copy of said Sign Lease Agreement being attached hereto as Exhibit D. However, the express term of this Sign Lease Agreement expired on November 17, 2009, and thus said lease is no longer in effect.

11. On or about February 9, 2001, Sonic and Debtor entered a Number 6A License Agreement for the operation of a Sonic drive-in located at 1614 South Adams Street, Fulton, Mississippi (CIF 4389), a copy of which is attached hereto as Exhibit E. On or about February 8, 2001, Sonic and Debtor entered into the Sign Lease Agreement by which Debtor leased from Sonic a Sonic sign for use at that particular location, a copy of said Sign Lease Agreement being attached hereto as Exhibit F. The express term of said lease has not yet expired. The License Agreement and the Sign Lease Agreement for that location should be integrated for purposes of 11 U.S.C. §365.

12. On or about September 28, 2001, Sonic and Debtor entered a Number 6A License Agreement for the operation of a Sonic drive-in located at 291 Second Street, Belmont, Mississippi (CIF 4503), a copy of which is attached hereto as Exhibit G. There is no Sign Lease Agreement currently in effect for that location.

13. On or about May 6, 2002, Sonic and Debtor entered a Number 6A License Agreement for the operation of a Sonic drive-in located at 710 City Avenue South, Ripley, Mississippi (CIF

4518), a copy of which is attached hereto as Exhibit H. On or about April 9, 2002, Sonic and Debtor entered into the Sign Lease Agreement whereby Debtor leased from Sonic a Sonic sign for use at that particular location, a copy of said Sign Lease Agreement being attached hereto as Exhibit I. The express term of said lease has not yet expired. The License Agreement and the Sign Lease Agreement for that location should be integrated for purposes of 11 U.S.C. §365.

14. On or about April 1, 2007, Sonic and Debtor entered a Number 5.5 License Agreement for the operation of a Sonic drive-in located at the intersection of Highway 45 North and South Chestnut Street in Aberdeen, Mississippi (CIF 1506), a copy of which is attached hereto as Exhibit J. The preferred address for that location is 808 South Chestnut Street, but it has also been identified as 415 Highway 45 North and, incorrectly, as 805 South Chestnut Street. On or about November 9, 1999, Sonic and Debtor entered into a Sign Lease Agreement by which Debtor leased from Sonic a Sonic sign for use at the Sonic drive-in now located at 808 South Chestnut Street. However, the express term of this Sign Lease Agreement, a copy of which is attached hereto as Exhibit K, expired on November 8, 2009, and thus said lease is no longer in effect.

15. On or about April 1, 2007, Sonic and Debtor entered into a Number 4.4/5.4 License Agreement for the operation of a Sonic drive-in located at 913 Highway 12 West, Starkville, Mississippi (CIF 2963), a copy of which is attached hereto as Exhibit L. On or about May 20, 2002, Sonic and Debtor entered into a Sign Lease Agreement by which Debtor leased from Sonic a Sonic sign for use at the Sonic drive-in at 15376 New Jackson Highway North, Russellville, Alabama (CIF 4636), a copy of said Sign Lease Agreement being attached hereto as Exhibit M. The Russellville location was later closed and the Sonic drive-in restaurant there was relocated to 913 Highway 12 West, Starkville, Mississippi (CIF 2963). The express term of the Sign Lease Agreement for that location has not expired. The Sign Lease Agreement for that location should be integrated with the License Agreement for that location for purposes of 11 U.S.C. §365.

16. On or about April 1, 2007, Sonic and Debtor entered a Number 5.5 License Agreement for the operation of a Sonic drive-in located at 1916 Highway 45 North, Columbus, Mississippi (CIF 1733), a copy of which is attached hereto as Exhibit N. On or about November 15, 1999, Sonic and

Debtor entered into a Sign Lease Agreement by which Debtor leased from Sonic a Sonic sign for use at that particular location, a copy of said Sign Lease Agreement being attached hereto as Exhibit O. However, the express term of this Sign Lease Agreement expired on November 14, 2009, and thus said lease is no longer in effect.

17. On or about April 1, 2007, Sonic and Debtor entered a Number 5.5 License Agreement for the operation of a Sonic drive-in located at 2608 West Main Street, Tupelo, Mississippi (CIF 3320), a copy of which is attached hereto as Exhibit P. On or about January 14, 2000, Sonic and Debtor entered into a Sign Lease Agreement by which Debtor leased from Sonic a Sonic sign for use at that particular location, a copy of said Sign Lease Agreement being attached hereto as Exhibit Q. The express term of the Sign Lease Agreement for that location has not yet expired. The Sign Lease Agreement for that location should be integrated with the License Agreement for that location for purposes of 11 U.S.C. §365.

18. On or about April 1, 2007, Sonic and Debtor entered a Number 5.5 License Agreement, for the operation of a Sonic drive-in located at 356 Highway 45 South, West Point, Mississippi (CIF 3085). Said License Agreement, a copy of which is attached hereto as Exhibit R, replaced an earlier contract that had applied to that location. On or about November 17, 1999, Sonic and Debtor entered into a Sign Lease Agreement by which Debtor leased from Sonic a Sonic sign for use at that address, a copy of said Sign Lease Agreement being attached hereto as Exhibit S. The express term of this Sign Lease Agreement expired on November 14, 2009, and thus said lease is no longer in effect.

19. On or about April 1, 2007, Sonic and Debtor entered a Number 5.5 License Agreement for the operation of a Sonic drive-in located at 44237 Highway 17 South, Vernon, Alabama (CIF 3321), a copy of which is attached hereto as Exhibit T. Said License Agreement replaced an earlier contract that had applied to that location. On or about January 11, 2000, Sonic and Debtor entered into a Sign Lease Agreement by which Debtor leased from Sonic a Sonic sign for use at that address. The express term of the Sign Lease Agreement, a copy of which is attached hereto as Exhibit U, has not expired, and said Sign Lease Agreement should be integrated with the License Agreement for

that location for purposes of 11 U.S.C. §365.

### REQUEST TO COMPEL PERFORMANCE UNDER UNEXPIRED SIGN LEASES

20. Pursuant to 11 U.S.C §365(d)(5), with respect to unexpired leases for personal property, a debtor in bankruptcy is required to perform timely his obligations thereunder that arise from or after 60 days after the filing of the bankruptcy petition and continuing until such lease is assumed or rejected. The Sign Lease Agreements for the six Sonic drive-in restaurants at 1197 South Gloster, Tupelo, Mississippi (CIF 3005; see ¶ 9 above), 1614 South Adams Avenue, Fulton, Mississippi (CIF 4389; see ¶ 11 above), 710 City Avenue South, Ripley, Mississippi (CIF 4518; see ¶ 13 above), 913 Highway 12 West, Starkville, Mississippi (CIF 2963; see ¶ 15 above), 2608 West Main Street, Tupelo, Mississippi (CIF 3320; see ¶ 17 above), and 44237 Highway 17 South, Vernon, Alabama (CIF 3321; see ¶ 19 above) are unexpired leases of personal property, and Debtor is required to satisfy §365(d)(5) with respect to obligations under those leases arising from or after December 28, 2009, which is 60 days after Petition Date. Debtor is not performing under those Sign Lease Agreements and is in default for, among other things, failure to pay monthly rent as specified in Exhibit A to said Sign Lease Agreements.

21. Sonic requests that the Court require Debtor to become and remain current with all of his obligations under the Sign Lease Agreements that have not expired, including paying rent and, pursuant to Section 8 of said Sign Lease Agreements, maintaining insurance on such signage and providing evidence thereof. The monthly sign rent, the pre-petition arrearage, and the post-petition arrearage for each unexpired Sign Lease Agreement are shown in the Affidavit of Chris Stroh, filed contemporaneously herewith.

### REQUEST TO REQUIRE DEBTOR TO EITHER: (1) SURRENDER OR PURCHASE SIGNS UNDER EXPIRED LEASES OR (2) PAY FOR THE USE THEREOF AND EXECUTE NEW SIGN LEASE AGREEMENTS

22. The terms of four of the Sign Lease Agreements have expired for the Sonic drive-in restaurants located at 302 Highway 12 East, Starkville, Mississippi (CIF 2857; see ¶ 10 above),

808 South Chestnut Street, Aberdeen, Mississippi (CIF 1506; see ¶ 14 above), 1916 Highway 45 North, Columbus, Mississippi (CIF 1733; see ¶ 16 above), and 356 Highway 45 South, West Point, Mississippi (CIF 3085; see ¶ 18 above). Thus, all signs that are subject to those expired Sign Lease Agreements should be surrendered or purchased immediately and, pursuant to 11 U.S.C. §503(b)(1)(A), Sonic should be allowed an administrative expense claim for rent on such signs from Petition Date through the date of surrender. In the alternative, if Debtor does not surrender or purchase those signs immediately, he should be required to execute new Sign Lease Agreements with respect to those locations, and as a pre-condition for entering into new Sign Lease Agreements, immediately pay the sums due under the expired Sign Lease Agreements and for the reasonable value of the use of said signs since expiration of the Sign Lease Agreements. Any purchase of signs should be at the prices set forth in the Stroh Affidavit, and those purchase prices should be paid immediately in cash.

23. The amount of the monthly sign rent and the amount of the arrearage (both pre-petition and post-petition through expiration of the respective terms) for each expired Sign Lease Agreement are set forth in the Affidavit of Chris Stroh, filed contemporaneously herewith. In summary, for the four locations with expired Sign Lease Agreements, the total pre-petition arrearage is $4,988.34 and the total arrearage for the period between Petition Date and November 30, 2009 is $831.39.

### REQUEST FOR ALLOWANCE AND IMMEDIATE PAYMENT OF SONIC'S ADMINISTRATIVE EXPENSE CLAIMS

24. The monetary obligations of Debtor to Sonic for the post-petition period, as described above, reflect the necessary costs and expenses of preserving the bankruptcy estate, as provided for in 11 U.S.C. §503(b)(1)(A) and as required to achieve fundamental fairness and to avoid unjust enrichment. Accordingly, they should be allowed as administrative expenses, and Debtor should be required to pay them immediately as a prerequisite of continuing to use the licenses from Sonic.

### RELIEF REQUESTED AS TO SIX DRIVE-IN RESTAURANTS ALLEGEDLY SOLD PRE-PETITION BY DEBTOR OR A RELATED ENTITY OR ENTITIES TO RONALD ("BUDDY") McCLAIN

25. Sonic has been informed by representatives of Debtor and others that just before Petition Date, Debtor or a related entity or entities sold to Ronald McClain ("McClain"), also known as Buddy McClain, the following six Sonic drive-in restaurants: (a) 2910 Lurleen Wallace Boulevard, Northport, Alabama (CIF 1179); (b) 58 McFarland Boulevard, Northport, Alabama (CIF 2632); (c) 2407 North Broadway Street, Selma, Alabama (CIF 2914); (d) 3160 15th Street, Tuscaloosa, Alabama (CIF 3047); (e) 4505 East McFarland Boulevard, Tuscaloosa, Alabama (CIF 3019); and (f) 2730 East University Drive, Tuscaloosa, Alabama (CIF 3050). Prior to those alleged sales, Debtor represented to Sonic that out of the consideration paid for the restaurants, Sonic would receive the sum of $255,663.37, which was the amount then-owing by Debtor to Sonic. Of that sum, $79,323.90 was owing with respect to those six locations. However, Sonic has not received said sum or any part thereof. Sonic has requested copies of the closing documents and information on the consideration paid by or on behalf of McClain but to date has received nothing.

26. If such sales occurred pre-petition, Sonic requests that: (a) a constructive trust for Sonic's benefit be imposed upon $255,663.37 of the consideration and/or proceeds paid to or payable to Debtor or a related entity; and (b) the applicable Sonic License Agreements and Sonic Sign Lease Agreements be assigned immediately by Debtor to McClain. If such sales did not occur prior to Petition Date and Debtor or a related entity still owns those locations, Sonic requests the same relief with respect to those locations and the Sonic license agreements and the Sonic sign leases associated therewith as requested in other parts of this Motion with respect to the drive-in restaurants identified in Paragraphs 9 through 19 above and the License Agreements and Sign Lease Agreements related thereto.

### PROHIBITING CLOSURE OF ANY OF DEBTOR'S SONIC RESTAURANTS OR CONDITIONING ANY SUCH CLOSURE UPON DEBTOR'S PROVIDING ADEQUATE PROTECTION TO SONIC

27. Pursuant to Section 6.05(c)(vi) of the License Agreements, Debtor is required to operate each of the Sonic restaurants every day of the year except Easter, Thanksgiving, and Christmas and to maintain sufficient supplies of food and paper products and to employ adequate personnel so as to

operate the restaurants at their maximum capacity and efficiency.

28. In addition, Section 14.02(a) of the License Agreements provides that Sonic may immediately terminate Debtor's franchises if Debtor "ceases to operate . . . or otherwise abandons [the restaurants] . . . or forfeits the legal right to do or transact business" at the designated locations.

29. It would be not only outside the ordinary course of business, but also contrary to reasonable business judgment, for Debtor to close any of his Sonic restaurants. This is true particularly in light of the fact that any such closure would be a default under the License Agreements and could result in the termination thereof. Moreover, Sonic has an interest in those restaurants as licensor, lessor, and creditor and is entitled to adequate protection of that interest pursuant to 11. U.S.C. §363(e). Thus, Sonic submits that Debtor should not close, or allow the closure of, any of his Sonic restaurants. Although Debtor is obligated under the Bankruptcy Code to obtain permission of the Court, in advance, for the closing of any Sonic restaurants, Sonic requests an order of the Court expressly prohibiting the closure of any of Debtor's Sonic restaurants or conditioning any such closure upon the providing of adequate protection of Sonic's interest.

## OTHER GOOD AND SUFFICIENT REASONS FOR RELIEF

30. Sonic also asserts that this Motion should be granted for other good and sufficient reasons to be assigned at a hearing on this matter.

## PRAYER FOR RELIEF

WHEREFORE, Sonic respectfully requests the entry of an Order:

(1) establishing January 26, 2010, or such other time soon thereafter that the Court deems appropriate, as the deadline for Debtor to assume or reject the License Agreements and the unexpired Sign Lease Agreements;

(2) compelling Debtor to comply immediately with both his monetary and non-monetary obligations under the Sonic License Agreements and the six unexpired Sign Lease Agreements, including responsibilities critical to public health and safety and the value of the Sonic brand, in order to avoid fundamental unfairness to Sonic and the unjust enrichment of Debtor due to Debtor's continuing infringement of Sonic's trade dress and other violations of those contracts;

(3) with respect to the expired Sign Lease Agreements, requiring Debtor immediately to surrender or purchase the signs or to enter into new Sign Lease Agreements and, as a pre-condition for entering into new sign leases, requiring Debtor to pay immediately the sums due under the expired Sign Lease Agreements and an amount equal to the reasonable value of the use of said signs since expiration of those Sign Lease Agreements;

(4) allowing and requiring immediate payment of administrative expense claims for Debtor's monetary obligations to Sonic for the post-petition period, as described above;

(5) granting the relief requested in Paragraph 26 above relative to the six Sonic drive-in restaurants allegedly sold by Debtor or a related entity or entities shortly before Petition Date;

(6) prohibiting the closure of any of Debtor's Sonic restaurants or conditioning any such closure upon Debtor's providing adequate protection to Sonic; and

(7) granting Sonic such other general and specific relief as this Court may deem appropriate and just;

THIS, the 10th day of December, 2009.

Respectfully submitted,

/s/ Paul A. Matthews
_____
PAUL A. MATTHEWS (TBPR No. 5591)
ROBERT K. ALVAREZ (MS Bar No. 1547)
Attorneys for Sonic Industries LLC
BOURLAND HEFLIN ALVAREZ MINOR & MATTHEWS, PLC
5400 Poplar Avenue, Suite 100
Memphis, Tennessee 38119-3660
Telephone:    (901) 683-3526
Facsimile:    (901) 763-1037
E-mail:       pmatthews@bhammlaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 10th day of December, 2009, a copy of the

foregoing was served via ECF upon the parties requesting notice and via U.S. Mail, postage prepaid, upon the following:

    Craig M. Geno, Esq.
    Attorney for Debtor
    Harris Jernigan & Geno, PLLC
    P.O. Box 3380
    Ridgeland, MS  39158-3380

    U.S. Trustee
    Office of the U.S. Trustee
    100 West Capitol Street, Suite 706
    Jackson, MS  39269

    /s/ Paul A. Matthews
    _____