UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: ERNIE LEE JACOBSEN and　　　　　　　　CASE NO. 09-15667-DWH
DONNA JEAN JACOBSEN　　　　　　　　　　　　　　　CHAPTER 11

IN RE: JA-CO FOODS, INC.　　　　　　　　　　　　CASE NO. 09-16017-DWH
　　　　　　　　　　　　　　　　　　　　　　　　　　CHAPTER 11

OPINION

On consideration before the court is a motion to dismiss or for summary judgment, filed by Sonic Industries, LLC, ("Sonic"), regarding motions filed by the debtor, Ernie Lee Jacobsen, to assume certain Sonic license agreements and sign leases; responsive pleadings having been filed by the debtors, Ernie Lee Jacobsen and Donna Jean Jacobsen ("Jacobsen"), as well as, Ja-Co Foods, Inc., ("Ja-Co"); and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of these proceedings pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. These are core contested proceedings as defined in 28 U.S.C. §157(b)(2)(A), (M), and (O).

II.

The following factual events, which the court finds are pertinent to this opinion, have been stipulated by the parties:

1.　　On October 29, 2009, the above captioned debtors filed their voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code.

2. Over a period of years, Sonic and Ernie Lee Jacobsen entered into a series of license agreements whereby Sonic granted to Jacobsen or related entities a separate license for each of the 23 Sonic drive-in restaurants at designated locations in Mississippi, Alabama, and Georgia.

3. Shortly before the petition date, Ernie Lee Jacobsen or a related entity or entities sold to Ronald McClain, also known as Buddy McClain, the following six Sonic drive-in restaurants: (1) 2910 Lurleen Wallace Boulevard, Northport, Alabama; (2) 58 McFarland Boulevard, Northport, Alabama; (3) 2407 North Broadway Street, Selma, Alabama; (4) 3160 15th Street, Tuscaloosa, Alabama; (5) 4505 East McFarland Boulevard, Tuscaloosa, Alabama; and (6) 2730 East University Drive, Tuscaloosa, Alabama.

4. Pursuant to the Agreed Order Granting Motion for an Order Pursuant to 11 U.S.C. §363 to Sell Certain Property of Debtors, entered May 5, 2010, in the Ja-Co case and entered May 10, 2010, in the Jacobsen case, Ernie Lee Jacobsen: (1) sold to M&F Management LLP, ("M&F"), the Sonic drive-in restaurants located at 44237 Highway 17 South, Vernon, Alabama; 291 Second Street, Belmont, Mississippi; 710 City Avenue South, Ripley, Mississippi; and 15376 New Jackson Highway, Russellville, Alabama; (2) assumed and assigned to M&F the Sonic license agreements for the first three of these locations since the license agreement for Russellville was terminated; (3) assumed and assigned to M&F the Sonic sign lease for the Ripley location; and (4) sold to M&F the Sonic signs for the Vernon and Belmont locations.

5. As of May, 2010, and through the present, Ernie Lee Jacobsen was and is the franchisee for the following eight Sonic drive-in restaurants, all of which are currently open and operating:

   a. 808 South Chestnut Street, Aberdeen, Mississippi

   b. 1916 Highway 45 North, Columbus, Mississippi

   c. 1614 South Adams Street, Fulton, Mississippi

   d. 913 Highway 12 West, Starkville, Mississippi

   e. 2608 West Main Street, Tupelo, Mississippi

   f. 356 Highway 45 South, West Point, Mississippi

   g. 1197 South Gloster Street, Tupelo, Mississippi; and

   h. 302 Highway 12 East, Starkville, Mississippi.

6. On October 12, 2010, Ernie Lee Jacobsen filed six motions to assume Sonic license agreements, which relate to locations (a), (b), (c), (d), (e), and (f) above. Jacobsen has not taken action to assume or reject the license agreements applicable to locations (g) and (h). Also, on October 12, 2010, Jacobsen filed six Motions to Assume Sonic sign leases, which relate to locations (a), (b), (c), (d), (e), and (f) above. He has not taken action to assume or reject the sign leases applicable to locations (g) and (h) above.

7. The relevant and corresponding provisions of each applicable Sonic license agreement are essentially the same.

8. Section 6.03 of Sonic license agreements requires Jacobsen to display and maintain at each location Sonic-approved signage. Except for the Belmont,

>Mississippi location, Jacobsen chose to lease such signage from Sonic and thus entered into the series of Sonic sign leases.
>
>9  The Sonic brand, including its distinctive and proprietary trade names, trademarks, service marks, trade dress, foods, and food delivery system, are fundamental to the Jacobsens' businesses.

In their response to Sonic's motion to dismiss or for summary judgment, Jacobsen and Ja-Co acknowledged that there was no lease for the property referred to as the "Starkville Realty." Therefore, Jacobsen and Ja-Co indicated that they will voluntarily withdraw their motion to assume which applied to this property. Consequently, this opinion will focus only on Jacobsen's and Ja-Co's motion to assume the six Sonic license agreements and the relevant Sonic sign leases applicable to the locations identified in sub-paragraphs (a), (b), (c), (d), (e), and (f) in paragraph 5 hereinabove. Jacobsen's and/or Ja-Co's ability to assume the sign leases is inextricably tied to their ability to assume the license agreements.

### III.

Sonic contends that Jacobsen's and/or Ja-Co's motion to assume should be dismissed or denied as a matter of law as a result of the language set forth in §365(c)(1) of the Bankruptcy Code[1] which reads as follows:

>(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if–
>   (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity

---

[1] Hereinafter, all Code sections mentioned in this opinion will be considered the United States Bankruptcy Code unless specifically designated otherwise.

> other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
> (B) such party does not consent to such assumption or assignment;

In this context, Sonic contends that the "applicable law" which excuses it from excepting performance from or rendering performance to an entity other than the debtor or the debtor-in-possession is the Lanham Act, 15 U.S.C. §§1051, et. seq. While the Lanham Act perhaps prohibits the assignment of trademarks, Jacobsen and Ja-Co acknowledge that federal common law prohibits the assignment of license agreements which involve trademarks. In this proceeding, however, it is obviously apparent that no assignment of a Sonic trademark is even contemplated. See the affidavit of Ernie Lee Jacobsen which indicates the following:

> 14. Neither Ja-Co nor I have any intention of assigning the Sonic license agreements. Post-assumption operations shall be exactly as the pre-assumption (and pre-petition) operations were conducted

The relationship that Jacobsen and/or Ja-Co have with Sonic will be discussed hereinbelow. Indeed, the intrinsic nature of this relationship might well be a material disputed factual issue.

To determine the applicability of §365(c)(1), Sonic advocates the utilization of the "hypothetical test" which emerged in the cases of *In re West Electronics, Inc.*, 852 F.2d 79, 83 (3rd Cir., 1988); *Perlman v. Catapult Entertainment, Inc., (In re Catapult Entertainment, Inc.)*, 165 F.3d 747, 750 (9th Cir. 1999), and *In re Wellington Vision, Inc.*, 364 B.R. 129 (S.D. Fla. 2007). Those decisions effectively held that under the "hypothetical test," a debtor could be precluded from assuming an executory contract even when the applicable law would not bar the <u>assumption</u> in the actual circumstances before the court, but would bar the <u>assignment</u> to a

5

hypothetical assignee because, under applicable law, the non-debtor party could refuse performance to or from the hypothetical assignee. This approach takes the somewhat nonsensical path that would prevent the assumption of an executory contract if applicable law would preclude the assignment of that contract, even when no assignment was intended or contemplated.

Numerous courts have rejected the "hypothetical test" approach in favor of an "actual test" to determine whether applicable law excuses a non-debtor party to the executory contract from performance. *See, Summit Inv. & Dev. Corp. v. Leroux*, 69 F.3d 608, 613 (1st Cir. 1995); *Cajun Elec. Members Comm. v. Mabey (In re Cajun Elec. Power Co-op., Inc.)*, 230 B.R. 693, 705 (Bankr. M.D. La. 1999); *In re Lil' Things, Inc.*, 220 B.R. 583, 587 (Bankr. N.D. Tex. 1998); *Texaco Inc. v. La. Land & Exploration Co.*, 136 B.R. 658, 669 (Bankr. M.D. La. 1992) (concluding the *West* hypothetical test is incorrect for three primary reasons); *In re Hartec Enters., Inc.*, 117 B.R. 865, 871 (Bankr. W.D. Tex. 1990); and *In re Footstar, Inc.*, 323 B.R. 566 (Bankr. S.D. N.Y. 2005).

A decision which this court finds to be particularly helpful is *In re Mirant Corporation*, 440 F.3d 238 (5th Cir. 2006). In *Mirant*, the Fifth Circuit was focused primarily on §365(e)(2)(A) of the Bankruptcy Code, rather than §365(c)(1), but the language and purpose of the two sections is very similar. Section 365(e)(2)(A), for comparative purposes, is set forth as follows;

> (2) Paragraph (1) of this subsection does not apply to an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if–
> (A)(i) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
> (ii) such party does not consent to such assumption or assignment;

6

In Footnote 17, the *Mirant* court explained the slight differences in the two sections, to-wit:

> "Before the 1984 amendment, the pivotal language in section 365(c) read precisely like the current version of section 365(e)(2); that is, it adverted to the 'applicable law excus[ing] a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance *to the trustee or to an assignee* of such contract or lease...'" *Summit Inv..*, 69 F.3d at 613 (alteration in original). In 1984, Congress made no change to the statute we address today, §365(e)(2)(A), and with respect to §365(c), it replaced the phrase "to the trustee or to an assignee of such contract or lease" that still appears in §365(e)(2)(A) with the phrase "to an entity other than the debtor or debtor in possession." *See* Leasehold Management Bankruptcy Amendments Act of 1983, Pub.L. No. 98-353, §362, 98 Stat. 333,361 (July 10, 1984); *see also Summit Inv..*, 69 F.3d at 613.

440 F.3d at 249.

In crafting an exception to the prohibition of "bankruptcy ipso facto clauses" found in §365(e)(1), §365(e)(2)(A) states that applicable law can excuse a non-debtor party to an executory contract from accepting performance from or rendering performance to the trustee or to an assignee. It effectively provides that applicable law can permit the non-debtor party to the executory contract to terminate the contract if either a trustee or an assignee, who are obviously not identical to the debtor, step into the debtor's contractual position. On the other hand, §365(c)(1) provides that applicable law can excuse the non-debtor party to the executory contract from accepting performance from or rendering performance to an entity <u>other than</u> the debtor or the debtor-in-possession. This section is obviously more "user friendly" to a debtor who becomes a debtor-in-possession and has no intention of assigning the contract.

Substantiating this court's reasoning concerning the effect of these two Code sections is the following language found in the *Mirant* opinion, to-wit:

The plain text of §365(e)(2)(A) requires an actual test for determining whether a law is "applicable" under the exception, permitting enforcement of an ipso facto clause.... Congress might have chosen the exception to apply if any law prohibited the assignment, but instead Congress tethered the exception to "applicable" law that "excuses a party." It is axiomatic that an applicable law must apply to a set of circumstances; BPA creates smoke and erects mirrors when it argues that a contract not assignable as a matter of law, even if no such assignment existed in fact and no excuse existed in fact for the nondebtor party to refuse acceptance of performance in a particular situation, satisfies the language chosen by Congress in drafting the §365(e)(2)(A) exception....The applicability of the law under §365(e)(2)(A) is determined not in the abstract but on the record at hand. *See Cajun Elec.*, 230 B.R. at 705; *Lil' Things*, 220 B.R. at 587; *Texaco*, 136 B.R. at 669; *Cardinal Indus.*, 116 B.R. at 974-75.

440 F.3d at 249 - 50.

The *West Electronics* decision was described in Collier on Bankruptcy as "troubling." Collier indicated that the purpose of §365(e) was to prevent a party to a contract from terminating the contract simply because the debtor had commenced a bankruptcy case and that §365(c) should not be interpreted to provide a means around §365(e) or its underlying policy. Collier then pointed with approval to the First Circuit's decision in *Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489 (1st Cir. 1997) and the Fifth Circuit's *In re Mirant Corp.*, 440 F.3d 238 (5th Cir. 2006). *See,* 3 Collier on Bankruptcy, §365.07[1][d].

The reasoning expressed in Collier, as well as, in the overwhelming majority of cases that have addressed this issue convinces this court that the "hypothetical test" relied upon by Sonic is erroneous.

IV.

As noted hereinabove, an issue that requires resolution is the relationship between Jacobsen/Ja-Co and Sonic. Are Ja-Co and Jacobsen one and the same, or has a defacto assignment been effectuated from Jacobsen to Ja-Co over the past several years? This is

potentially a material factual issue that remains in dispute which can only be resolved through an evidentiary hearing.

In addition, before Jacobsen and/or Ja-Co can assume the license agreements or the sign leases, either or both must cure all of the existing defaults or provide adequate assurance that the said defaults can be promptly cured. *See,* §365(b)(1) of the Bankruptcy Code which provides the most sensible and practical protection for Sonic. While it was not discussed extensively, there is also the question of whether the license agreements are personal service contracts, and, therefore, not assumable by Ja-Co.

For the reasons set forth hereinabove, the court concludes that Sonic's motion to dismiss is not well taken primarily because this court rejects the "hypothetical test" approach when there is a clear absence of an intent to assign the executory contracts or the unexpired leases. The court also concludes that Sonic's alternative request for summary judgment is not well taken because material factual issues remain in dispute.

A separate order overruling Sonic's motion will be entered contemporaneously with this opinion.

This the 7th day of February, 2011.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE